UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAURICE WILLIAMS,

    Petitioner,

v.

                              CASE NO. 2:07-CV-12333
                              HONORABLE VICTORIA A. ROBERTS
                              UNITED STATES DISTRICT JUDGE

HUGH WOLFENBARGER,

    Respondent.
_____/

**OPINION AND ORDER DENYING THE
PETITION FOR WRIT OF HABEAS CORPUS**

Maurice Williams, ("Petitioner"), confined at the Macomb Correctional Facility, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his Oakland Circuit Court conviction for first-degree home invasion, M.C.L.A. 750.110a(2), malicious destruction of property causing more than $1,000 but less than $20,000 damage, M.C.L.A. 750.380(3)(a), and malicious destruction of property causing less than $200 damage. M.C.L.A. 750.377a(1)(d). For the reasons stated below, the application for writ of habeas corpus is **DENIED.**

**I. Background**

Petitioner was tried before a jury in the Oakland Circuit Court. The prosecution's theory was that Petitioner broke his way into Fant's house looking for his girlfriend, Stephanie Gibbs, because Petitioner was jealous that Gibbs was with Fant at two o'clock in the morning. When Petitioner did not find anyone in the house, he took out his anger by

1

further damaging the house and then Gibbs's car.

Gibbs testified at trial that she had a child with Petitioner. On the night of December 20, 2003, Gibbs dropped her son off at Petitioner's mother's house. Gibbs testified that she was on her way to see Petitioner when she stopped at Fant's house. Gibbs stated that she only intended to stay at Fant's house for 15-20 minutes and that she tried calling Petitioner while there. Although Gibbs indicated that her relationship with Petitioner was "pretty good" and that they were "together" at the time, she also stated that she had "issues" with other men like Fant.

Gibbs and Fant were watching television at 2:00 a.m. in the basement when she heard loud knocking and glass shattering from the front of the house. Gibbs then heard footsteps and glass breaking upstairs. She also heard Petitioner's voice repeatedly calling her name. Confused and nervous, she stayed in the basement and hid.

Xavier Fant testified that Gibbs had come over to his house at around 10:30 p.m. and that they were watching television in his basement. According to Fant, he and Gibbs were dating. Fant testified that he knew Petitioner, considered Petitioner a friend, and could recognize Petitioner's voice.

Fant explained that sometime during the evening, Gibbs received two phone calls and, as a result, asked Fant to move her car up to his garage. Fant did, and they continued to watch television.

At around 2:00 a.m., Fant heard a loud kick at the door and then heard glass shattering. Fant then heard walking around and loud obscenities coming from upstairs. He

2

recognized the voice as Petitioner's. He also heard Petitioner yell out Gibbs's name. And, Fant heard a kick on the door to his mother's bedroom.

Fant saw that Gibbs had hidden between the furnace and water boiler. While still in the basement, Fant called the police and remained on the line with the 9-1-1 operator. Fant estimated that the police arrived within two-to-three minutes, but Petitioner had already left the house.

The police notified him that it was safe to come upstairs. Fant saw that the area near the front door was damaged; there was a shattered window and broken glass on the floor. Fant saw that the locked door to his mother's bedroom had been broken off its hinges. Fant went outside and saw that Gibbs's car window was broken.

Fant's mother testified that it cost $2,450 to repair the damage to the front door of the house. She had an estimate that it would cost $237 to replace her bedroom door.

Allen Wilson lived three doors from Fant and was a friend of Petitioner. He said that Petitioner came to his house and banged on the front door at about 2-3:00 a.m. on September 20, 2003. Petitioner was bleeding and Wilson asked what was wrong. Wilson recalled that Petitioner was breathing in a "huffing and puffing" manner and was in a "panicky" state.

Petitioner asked Wilson to use his phone, but as soon as Wilson gave the phone to Petitioner, police cars pulled up to the front of his house. Petitioner fled through the back of Wilson's house. Wilson testified that Petitioner's mother's house was only a few minutes away.

Southfield Police Officer and canine handler Jeffrey Medici arrived with his dog at

3

Wilson's house and attempted to track Petitioner. The dog was able to pick up a scent and, after tracking through the neighborhood and schoolyard, ended up at Petitioner's mother's house.

A jury found Petitioner guilty of the charged offenses.

Petitioner appealed by right. His appellate brief raised what now form his three habeas claims. The Michigan Court of Appeals affirmed. *People v. Williams*, No. 257404 (Mich. Ct. App. January 24, 2006). Petitioner sought to appeal this decision to the Michigan Supreme Court, but his application for leave to appeal was denied. *People v. Williams,* 476 Mich. 856, 718 N.W.2d 334 (2006).

Petitioner now seeks a writ of habeas corpus on three grounds:

I. The Court committed reversible error when it failed to instruct Petitioner's jury that home invasion and malicious destruction of property are specific intent crimes.

II. Petitioner's conviction and sentence for felony malicious destruction of property, when the destruction occurred and was part of the breaking and entering necessary for conviction on home invasion, constitutes double jeopardy.

III. The evidence presented at Petitioner's trial was insufficient to convict him of first-degree home invasion.

## II. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

4

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III.  Discussion

#### A. The Jury Instruction Claim

Petitioner first claims that the trial court erred in instructing the jury on the elements of first-degree home invasion. Petitioner complains that the jury was not instructed that the prosecutor was required to prove that he specifically intended to commit a felony inside Fant's house to sustain the charge. Respondent contends that the claim is procedurally defaulted because Petitioner did not object to the instruction at trial, and as a result the

5

Michigan Court of Appeals reviewed the claim under the plain-error standard.

Respondent is correct; the claim is barred from habeas review. Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85-87(1977). Such a procedural default occurs when a petitioner fails to comply with a state procedural rule, the rule is relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005).

Petitioner's jury instruction claim was procedurally defaulted by virtue of his failure to object to the instructions in the trial court, resulting in appellate review by the state courts under the plain-error standard of review. In rejecting Petitioner's claim the Michigan Court of Appeals relied on Petitioner's failure to object as a ground for its decision:

> Because defendant failed to preserve this issue by requesting the jury be instructed on specific intent at trial, we review the issue for plain error affecting defendant's substantial rights. . . . We find no plain error with respect to the trial court's instructions related to the charges of first-degree home invasion or malicious destruction of a building.

*Williams*, slip op. at 1.

It is well-established that the Michigan Court of Appeals' application of plain-error review, constitutes the invocation of an independent and adequate procedural rule that bars federal review of the merits of his claim absent a showing of "cause and prejudice." *Fleming v. Metrish*, 556 F.3d 520, 524 (6th Cir. 2009).

Procedural default may be excused where the petitioner demonstrates cause and prejudice for his failure to comply with the state procedural rule, or when a petitioner

6

establishes that failing to review the claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Combs v. Coyle*, 205 F.3d 269, 274 (6th Cir. 2000). To demonstrate that a "fundamental miscarriage of justice" would occur absent review of a petitioner's claim, the petitioner must assert a credible claim of actual innocence that is supported by reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 315-16 (1995).

Petitioner's reply brief suggests that his trial attorney was at fault for failing to object. Petitioner's Traverse, at 5. However, when a petitioner claims ineffective assistance of counsel as cause for a procedural default, the allegation of ineffectiveness is a separate claim which must itself be exhausted in state court according to the normal procedures. *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000); *Murray v. Carrier*, 477 U.S. 478, 489 (1986) ("The exhaustion doctrine . . . generally requires that a claim of ineffective assistance of counsel be presented to state courts before it may be used to establish cause for a procedural default."). According to *Edwards*, the failure to exhaust the ineffectiveness claim will itself constitute a procedural default of the cause argument and prevents a federal court from hearing it. *Id.*, 529 U.S. at 452. Petitioner never exhausted a claim that his trial counsel was ineffective for failing to object to the jury instructions; therefore, he cannot demonstrate cause to excuse his default.

Because Petitioner has not established cause, the court need not address the issue of prejudice. See *McCleskey v. Zant*, 499 U.S. 467, 502 (1991). Yet, even if Petitioner had established cause, his showing of prejudice would fall short.

In determining that Petitioner had not demonstrated plain error, the Michigan Court of Appeals found that the version of first-degree home invasion that Petitioner was charged with does not require an element of specific intent. *Williams*, slip op. at 1-3. The Michigan Court of Appeal also rejected Petitioner's interpretation of the malicious destruction of a building statute. *Williams*, slip op. at 1-3.

State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). A federal habeas court must therefore defer to a state appellate court's construction of the elements of state crimes. *See Coe v. Bell*, 161 F. 3d 320, 347 (6th Cir. 1998). This Court is bound by the Michigan Court of Appeals decision that the jury was correctly instructed on the elements of the charged offenses. Therefore, Petitioner has not demonstrated prejudice.

### B. The Double Jeopardy Claim

Petitioner next contends that his conviction for both first-degree home invasion and malicious destruction of a building violates his Fifth Amendment right not to be placed in double jeopardy, because the act that supported the destruction of a building charge - breaking down Fant's front door - was also the act that satisfied the entry element of the home invasion charge. Respondent asserts that the Michigan Court of Appeals reasonably rejected the claim.

The question is one of legislative intent. If the Michigan Legislature intended for multiple punishments to be imposed for an act that violates both the first-degree home invasion statute and the malicious destruction of a building statute in a single prosecution,

8

then the Double Jeopardy Clause is not implicated. *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983).

The Michigan Court of Appeals noted that M.C.L.A. 750.110a(9) specifically provides that "imposition of a penalty under this section [first-degree home invasion] does not bar imposition of a penalty under any other applicable law." *Williams*, slip op. at 3. The state court went on to find that "because the Legislature clearly intended multiple punishment for first-degree home invasion and the underlying felony that satisfies an element of first-degree home invasion, these is no double jeopardy violation." *Williams*, slip op. at 3.

The Supreme Court "has never held or intimated that the constitutional bar against double jeopardy circumscribes the legislative prerogative to define crimes and prescribe punishment in the context of a single prosecution." *White v. Howes*, 586 F.3d 1025, 1032 (6th Cir. 2009). And a federal habeas court "is bound by a state court's construction of that state's own statutes." *See Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989)(noting that "once a state court has determined that the state legislature intended cumulative punishments, a federal habeas court must defer to that determination."). Indeed, in *Hunter*, the Supreme Court stated that where "a legislature specifically authorizes cumulative punishment under two statutes, . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishments under such statutes in a single trial." *Id.*, 459 U.S. at 368-69. Because the Michigan Court of Appeals in this case determined that the Michigan Legislature intended to allow for

multiple punishments for violations of the two statutes in question in a single prosecution, and because that determination of legislative intent is binding on this court, the decision of the state court did not involve an unreasonable application of clearly established Supreme Court law. Habeas relief is therefore barred by § 2254(d)(2).

### C. The Sufficiency of the Evidence Claim

Petitioner next asserts that insufficient evidence was presented at trial to sustain his conviction for first-degree home invasion. Petitioner's argument is a bit subtle. He first asserts that the damage to the front-door must be discounted from the malicious destruction of a building charge because it was already "counted" as part of the "breaking" element of the home invasion charge. Petitioner goes on to state that if the damage to the front door is discounted for purposes of the malicious destruction charge, then that predicate offense only constituted a misdemeanor and therefore could not support a charge of first-degree home invasion.

This argument is not a true challenge to the constitutional sufficiency of the evidence, but is one based on a construction of state law that was rejected by the Michigan Court of Appeals:

> M.C.L.A. 750.380(1) prohibits malicious destruction of another person's house. The crime is a felony if the amount of damage is greater than $1,000. M.C.L.A. 750.380(3)(a). M.C.L.A. 750.110a(2) prohibits the commission of a felony "while entering, being present in, or existing the dwelling." It does not permit a conviction only where a felony is committed after a defendant enters a dwelling.

*Williams*, slip op. at 3.

State courts are the "ultimate expositors of state law." *Mullaney*, 421 U.S. at 691. What is essential to establish the elements of a crime is a matter of state law. *Sanford v. Yukins*, 288 F. 3d 855, 862 (6th Cir. 2002). Thus, "[s]tates are allowed to define the elements of, and defenses to, state crimes." *See Lakin v. Stine*, 80 Fed. Appx. 368, 373 (6th Cir. 2003)(*citing Apprendi v. New Jersey*, 530 U.S. 466, 484-87 (2000); *McMillan v. Pennsylvania*, 477 U.S. 79, 84-86 (1986)). A federal habeas court must therefore defer to a state appellate court's construction of the elements of state crimes. *Coe*, 161 F. 3d at 347. Contrary to Petitioner's argument, the Michigan Court of Appeals found that the prosecutor was not required to show an additional $1,000 worth of damage *inside* Fant's house. The damage to the front door, under state law, was properly counted as part of the predicate felony. Because Petitioner does not dispute that the evidence presented with respect to the damage to the front door was sufficient to establish the minimum $1,000 damage element of the predicate felony, his challenge to the sufficiency of the evidence fails.

### IV. Conclusion

The Court denies the petition for writ of habeas corpus. The Court also denies a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's

constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002).

A Certificate of Appealability is denied because Petitioner failed to make a substantial showing of the denial of a federal constitutional right. Jurists of reason would not find this Court's resolution of Petitioner's claims to be debatable, or that he should receive encouragement to proceed further. *Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

Although this Court denies a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing *United States v. Youngblood*, 116 F. 3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of Petitioner's claim, the issues are not frivolous; therefore, an appeal could be taken in good faith and

Petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V. **ORDER**

The Court denies:

    (1)    The Petition for Writ of Habeas Corpus; and

    (2)    A Certificate of Appealability.

Petitioner is **GRANTED** leave to appeal *in forma pauperis.*

IT IS ORDERED.

                                                s/Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated: October 20, 2010

---

The undersigned certifies that a copy of this document was served on the attorneys of record and Maurice Williams by electronic means or U.S. Mail on October 20, 2010.

s/Linda Vertriest
Deputy Clerk

---